UNITED STATES, Appellee

v.

Harold W. SMAULEY, Sergeant, U.S. Marine Corps, Appellant.

No. 94–1001.
CMR No. 90 3692.

U.S. Court of Appeals for the Armed Forces.

Argued April 5, 1995.

Decided Sept. 21, 1995.

For Appellant: *Captain J.F. Havranek,* USMC (argued); *Lieutenant Philip L. Sundel, JAGC,* USNR (on brief).

For Appellee: *Lieutenant David M. Harrison,* JAGC, USN (argued); *Colonel J. Composto, USMC, Commander Stephen A. Stallings,* JAGC, USN, *Commander F.E. Matthews,* JAGC, USNR, *Lieutenant Commander Lyle H. Bowen, Jr.,* JAGC, USN (on brief); *Colonel T.G. Hess,* USMC.

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. In May of 1990, appellant was tried by a general[1] court-martial composed of a military judge alone at Camp Pendleton, California. Pursuant to his pleas, he was found guilty of attempted carnal knowledge of his 12–year old stepdaughter on November 5, 1988; carnal knowledge of this same minor girl on February 9, 1990; and committing indecent acts with her between November

---

1. Contrary to the statement on page 1 of the record of trial, this case was referred as a general court-martial.

1987 and November 1988, in violation of Articles 80, 120, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 920, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 5 years, forfeiture of $300.00 pay per month for 60 months, and reduction to pay grade E–1. On November 15, 1990, the convening authority approved the adjudged sentence. On December 6, 1993, the remaining confinement was remitted. The Court of Military Review [2] affirmed on February 10, 1994. 39 MJ 853.

2. On August 22, 1994, this Court granted review of the following issue [3]:

> WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED WHEN IT HELD THAT THE DEFENSE OF VOLUNTARY ABANDONMENT WAS NOT RAISED DESPITE THE FACT THAT IT ALSO FOUND THAT APPELLANT HAD RENOUNCED HIS CRIMINAL PURPOSE PRIOR TO THE COMPLETION OF THE UNDERLYING OFFENSE.

We hold that appellant's providence-inquiry responses were not substantially inconsistent with his guilty pleas to attempted carnal knowledge. *See United States v. Schoof,* 37 MJ 96, 104 (CMA 1993); *United States v. Smith,* 34 MJ 319, 324 (CMA 1992).

3. The facts giving rise to the granted issue were found by the Court of Military Review as follows:

> Appellant pled guilty to attempted carnal knowledge by placing "his erect penis next to the vaginal area of [victim] and attempting to insert [his] penis into her vagina." The guilty pleas were accompanied by a stipulation of fact. According to appellant's statements made during the providence inquiry and the stipulation, appellant was alone with his 12–year–old stepdaughter in the living room of their house. Appellant asked the girl to undress, but she refused. Appellant undressed himself, approached her, and began to fondle her breasts and vaginal area over and underneath her clothing and un-

derwear. Appellant then took off her clothes and lay on top of her. He placed his erect penis against her vaginal area and attempted to insert it. Appellant said that immediately after physical contact occurred he "withdrew from the attempt." According to him, no penetration resulted. The military judge asked, "Now, why were you not able to effect penetration? Was there some circumstance which prevented you from consummating the act?" Appellant responded, "Yes, sir, my conscious (sic)." He said that he "suddenly changed his mind" just after the "physical contact" and "just backed off." Appellant said that he "understood the significance of the timing."

> After this offense, appellant entered therapy for sexual child abuse and also attended therapy sessions with his wife. After months of therapy and about 15 months after the attempted carnal knowledge with his stepdaughter, he initiated a similar incident of molestation during which carnal knowledge actually occurred.

39 MJ at 854.

— — —

█ 4. A guilty plea by a military accused should not be accepted by a judge if that accused asserts "matter inconsistent with" that plea. Art. 45(a), UCMJ, 10 USC § 845(a); RCM 910e, Discussion, Manual for Courts–Martial, United States, 1984. *See United States v. Higgins,* 40 MJ 67, 68 (CMA 1994), *citing United States v. Penister,* 25 MJ 148, 151 (CMA 1987). Once accepted as provident, a guilty plea should be set aside on appeal only if matter in the record creates "substantial conflict" with the guilty plea. *United States v. Higgins, quoting United States v. Stewart,* 29 MJ 92, 93 (CMA 1989), and *citing United States v. Prater,* 32 MJ 433, 437 (CMA 1991). A statement raising an affirmative defense to a charged offense may constitute matter in substantial conflict with a guilty plea. *United States v. Clark,* 28 MJ 401, 406–07 (CMA 1989).

---

**2.** *See* 41 MJ 213, 229 n. * (1994).

**3.** The granted issue is as stated in the Supple-

ment unless stated differently in the Grant Order.

5. Appellant asserts that his guilty pleas to attempted carnal knowledge were improvident because his responses to the judge were in substantial conflict with those pleas. He contends that his guilty-plea responses raised the defense of voluntary abandonment. He particularly calls this Court's attention to his statement that his "conscious [sic]" prevented him from effecting penetration and consummating the act of sexual intercourse with his stepdaughter on November 5, 1988. The Court of Military Review concluded that the defense of voluntary abandonment was not raised by appellant's guilty-plea responses. 39 MJ at 860.

6. Chief Judge Everett first considered applicability of the affirmative defense of voluntary abandonment to the military crime of attempt in *United States v. Byrd,* 24 MJ 286, 290–93 (CMA 1987) (Opinion of Everett, C.J.). Later, writing for this Court in *United States v. Rios,* 33 MJ 436, 440 (1991), he opined that this affirmative defense was available in the military justice system to the charge of attempt but that this defense was not raised on the record in that particular case. *See also United States v. Schoof,* 37 MJ at 104. Finally, the President in the Manual for Courts–Martial, United States, 1984, has now expressly recognized the existence of this defense at courts-martial. Exec. Order No. 12960, 60 Fed.Reg. 26653 (1995), § 4a, amending para. 4c, Part IV, Manual, *supra* (effective June 10, 1995). *Cf. United States v. Byrd,* 24 MJ at 290 (affirmative defense found implicitly in previous versions of Manual for Courts–Martial). *See also United States v. Ball,* 22 F.3d 197, 199 (8th Cir.1994); *United States v. Dworken,* 855 F.2d 12, 20–22 (1st Cir.1988).

7. The question presented in appellant's case concerns limitations on this defense as a matter of military law. Judge Lawrence, writing for the court below in this case, adopted a "substantial-harm"-to-the-victim restriction on this defense where the "attempted offense against the person has progressed into its last stages." 39 MJ at 854. The Government goes further and argues that this defense should not even apply in assault cases. *See generally* R. Perkins and R. Boyce, *Criminal Law* 656 (3d ed. 1982);

W. LaFave and A. Scott 2 *Substantive Criminal Law* § 6.3(b)(2) at 53–57 (1986); § 5.01(4), Comment, ALI Model Penal Code, *reprinted in* ALI *Model Penal Code and Commentaries* (Part I) 356–58 (1985). *See State v. Mahoney,* 264 Mont. 89, 870 P.2d 65, 72 (1994) (12 stab wounds constitute "substantial harm"); *Apodaca v. State,* 796 P.2d 806, 808 (Wyo.1990); *Ramirez v. State,* 739 P.2d 1214, 1216–17 (Wyo.1987); *People v. Kimball,* 109 Mich.App. 273, 311 N.W.2d 343, 347 (1981). Appellant, on the other hand, suggests neither restriction on this defense exists or should exist as a matter of military law.

8. We do not agree with appellant that the defense of voluntary abandonment exists unrestricted as a matter of civilian or military law. *Id.* However, today, we need not decide the dispute between the Government and the Court of Review concerning the precise contours or limitations of this affirmative defense. Applying either theory of limitation, we conclude that appellant's pleas were valid as a matter of military law.

9. Turning to the record, we note that appellant was charged with an assault-type offense and that he admitted committing a sexually offensive touching of the victim. The record shows that he:

(1) asked his stepdaughter to undress but she refused;

(2) "undressed himself";

(3) "fondle[d] her breasts and vaginal area over and underneath her clothing";

(4) removed her clothing;

(5) "lay on top of her" and "placed his erect penis against her vaginal area"; and

(6) "attempted to insert" his penis into her vagina.

39 MJ at 854. Clearly, appellant assaulted his stepdaughter and, in fact, progressed to the last step before consummation of the crime of carnal knowledge. ¶ 45c(2), Part IV, Manual, *supra. See State v. Mahoney,* 870 P.2d at 72.

10. On the issue of substantial harm, we conclude that its existence in this case was established beyond cavil. Appellant stipulated to the numerous general facts concern-

ing the repercussions of such conduct on female incest victims. He also stipulated to the particular facts resulting from his illicit sexual contact with his stepdaughter, including that occurring on November 5, 1988. The stipulation states:

[ (13) ] [Stepdaughter] has required extensive therapy since November 1988. On 1 December 1988, [she] was seen by Ms. Elizabeth Griffin, a licensed marriage, family and children's counselor at Children's Hospital and Health Center, San Diego, California. During this session, [she] related the details of the previous indecent acts which had been committed upon her by the accused. She stated that these acts had been taking place since she was ten years old. Using anatomically correct dolls, [she] portrayed these acts. As a result of this interview, Ms. Griffin specifically recommended that [she] continue her weekly counseling session.

[ (14) ] On 16 February 1990, [she] was seen by Dr. Judy Goldstein, a medical doctor at the Children's Hospital and Health Center, San Diego, California. This observation was scheduled in order to determine the existence of evidence of sexual contact. At the end of this examination, Dr. Goldstein noted that "[t]his child is seriously emotionally disturbed and possibly developmentally delayed. These facts could be related to chronic molestation."

[ (15) ] On February 14, 1990, for a period of six weeks, [she] was placed in the San Luis Rey Psychiatric Hospital in a "maximum hospitalization" status as a result of her severe psychiatric problems caused partially by the accused's sexual abuse.

[ (16) ] [She] was subsequently placed in residential care at the Boys and Girls Mental Health Center. Her psychiatrist, Dr. Ackerly, indicates that [she] will require a minimum of one full year of such psychiatric care.

■ 11. In conclusion, we hold that the full context of a providence inquiry must be considered before deciding on appeal that a substantial inconsistency with a guilty plea exists. *See United States v. Bester,* 42 MJ 75 (1995); *United States v. Smith,* 34 MJ at 324. Here, the record clearly shows that appellant committed a serious indecent assault on his stepdaughter before desisting in his attempt to commit carnal knowledge upon her. In these circumstances, we conclude that appellant's subsequent asserted act of conscience did not raise a substantial inconsistency with his pleas of guilty to attempted carnal knowledge.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.